## [No. 1488.]
## HOOPER ET AL. v. HARTWELL ET AL.

1. PARTNERSHIP—DISSOLUTION—NOTICE—EVIDENCE.

In an action against a copartnership on account for goods sold and de-
livered, where the issue raised by the defense was a dissolution of
the partnership and notice of dissolution to plaintiffs, it was an
error to exclude evidence of correspondence between plaintiffs and
defendants at the time of the shipment of the goods wherein plain-
tiffs inquired if there had been a dissolution and defendants, over
their firm signature, replied that there was no dissolution.   It was
also error to exclude the testimony of one, familiar with the plain-
tiffs' business, as to whom the sale was made and on whose credit
the goods were delivered.

2. EVIDENCE.

In an action upon account for goods sold and delivered it is proper to
ask a witness how much is due, and whether or not it has been paid,
if the witness knows it is proper for him to state the extent of the
shipment, and whether the sum had or had not been paid.

3. EVIDENCE.

In an action against a partnership for goods sold and delivered, where
the partnership had been dissolved and succeeded by a corporation,
and it appeared that the goods had been shipped to a branch house
in the name of one of the individual partners, and it was claimed
by defendants that the individual in whose name the goods were
shipped was alone liable, it was proper to show in evidence the
history of the entire accounts between the parties, the transfer to
the corporation of the account and the reason for it, and whether
or not there was any agreement to release the old firm for debts
already incurred.

4. INSTRUCTIONS.

In an action on account for goods sold and delivered an instruction that
"plaintiffs in this action are suing on a balance of an account, and
it rests upon them to show from the evidence what that balance is;
and if the evidence in this case is too uncertain for you to deter-
mine what balance, if any, is due from the defendants to the plain-
tiffs, then you must find the issues for the defendant," was erroneous
as tending to mislead the jury, as from the instruction the jury might
infer that plaintiffs were bound to show the exact sum due, and,
failing in that, were not entitled to recover anything.

5. PARTNERSHIP—INSTRUCTIONS—WAIVER.

In an action against a partnership where the defense was a dissolution
of the partnership and notice to plaintiffs prior to the shipment of
the goods, it was error to submit the question to the jury to deter-

VOL. XII—11

mine whether or not plaintiffs had waived their right to assert their claim against the old partnership by looking to their successor for the debt. If the defendants were liable plaintiffs could not waive their rights, and could only be deprived of their remedy against the defendants by releasing that right and accepting the new parties for the debt, and such novation must be based upon a consideration.

*Error to the District Court of Ouray County.*

Mr. T. W. EMERSON and Mr. THOMAS Y. BRADSHAW, for plaintiffs in error.

No appearance for defendants in error.

BISSELL, J.

The plaintiffs as copartners under the name of Hooper & Company sued Hartwell, Brunson and Lee as copartners under the name of Hartwell, Brunson & Company on an account for goods sold and delivered. The defendants in error neither appeared nor filed a brief. The transactions out of which the action arose were for sales of lumber between October, 1890, and June 9, 1891. The two firms had been doing business together for some time, and there had been shipped to the defendant firm at Ouray several carloads. While the business was carried on Hartwell, Brunson & Company opened a branch yard at the town of Ridgway, and Hooper & Company were directed to send part of the lumber there. Subsequently they were directed to bill the goods sent to Ridgway to D. C. Hartwell, one of the members of the firm, and, as the purchasers stated, it was their desire to keep their bills and accounts separate from the Ouray business. The dealings between the two concerns ran along for some time, remittances were made from time to time, sometimes by the firm and sometimes by drafts sent by Hartwell. The defendant firm afterwards dissolved and organized a corporation, and an account was opened in the name of the corporation to which the outstanding account against Hartwell, Brunson & Company was transferred. The corporation at the request of the firm was the successor in the business, and it

probably assumed the debts of the old firm, although no agreement on the part of Hooper & Company to accept the substituted credit of the new corporation was proven. It would seem, although it is not made very plainly apparent, that Hooper & Company were afterwards notified of the dissolution, and that Hartwell was doing business for himself. They sold some goods to him after the dissolution. When Hartwell made a remittance he gave no direction as to its application, and the money was applied on the goods shipped to Hartwell and received by him, though probably on a shipment made prior to the receipt of the notice of the dissolution. No direction was made respecting it, and the creditors simply exercised the right which under these circumstances, the law generally gives them. As the result of these transactions there was an outstanding indebtedness in favor of Hooper & Company, according to their complaint, of a little upwards of $800, for which they brought suit. The defense was a denial that the defendants were doing business as copartners at Ridgway at the dates named, or at the time the goods were sold, the dissolution and notice to the plaintiffs. This was the issue formed by the pleadings and on which the parties went to trial. It is unnecessary to go through the entire record and review each ruling of the court so long as we are able to settle two or three general questions which must reverse the case and whereon the principal errors were committed. The other matters are of such slight significance that in the light of what we shall decide there will be no probability of their recurrence, and should the issues be again submitted to a jury their verdict will settle the dispute. The plaintiffs took sundry and divers depositions of the clerks and managers of the San Francisco concern which were offered in evidence; most of the depositions were read without objection, although to each objections were interposed and some of them sustained, as we think erroneously. To these only shall we refer. There is attached to Hooper's deposition and referred to in the answer to the fourteenth interrogatory sundry exhibits; these were

objected to and excluded.   We think the court erred in its
ruling.   At the time they were first offered it was not quite
apparent that the proof was material, but they were re-offered
and at that time they were decidedly pertinent.   It will be
remembered the issue tendered was the dissolution of Hart-
well, Brunson & Company and notice to Hooper & Company.
The exhibits were telegrams and letters which passed between
the two houses concerning the various orders and shipments.
Exhibits K and L were relevant to the issue.   It will be re-
membered that by direction of the Ouray firm, the San Fran-
cisco house was ordered to bill the goods to Hartwell at
Ridgway.   This circumstance immediately raised the query
in the minds of the San Francisco house whether they were
dealing with Hartwell or the concern at Ouray which had
theretofore been their customers.   The letter of November 17,
1890, from the San Francisco house says : " We hope to hear
from your Ridgway branch with additional order.   As we
understand it there is no dissolution in the concern, but Mr.
Hartwell is running the Ridgway yard.   We will according
to instructions send all bills, etc., for shipments to that yard,
to Mr. Hartwell at that place."   It will be observed this
was a direct inquiry in order that the San Francisco Com-
pany might learn whether they were dealing with Hartwell
alone or with the old firm.   In exhibit L is the answer signed
by the firm which referred to the antecedent letter, and therein
it is directly stated: " There is no dissolution in the firm.
Mr. Hartwell is running the Ridgway yard, and we desire
all bills, etc., kept separate."   It is quite impossible for us
to see why all these various telegrams and letters which
were annexed to Hooper's deposition were not material as
throwing light on the main issue.   They are of greater or
lesser significance, as the case may be, but are all relative,
and it was only on the ground of their immateriality, and
therefore incompetency, that the defendants objected to
their introduction.   The objection was not well based, and
ought not to have been sustained.   Objections were made
to interrogatories fifteen and sixteen and the answers, and

we think both ought to have been admitted, although they are not of serious consequence and neither of them contain matters of great significance other than a simple statement of the amount then due.

Plaintiffs also offered in evidence the deposition of Flagg. Interrogatory eleven and its answer were objected to and excluded as we think erroneously. Since the issue was as to the dissolution of the firm and the parties to whom the goods were sold, the inquiry was very properly put to the witness who was entirely familiar with the business of the San Francisco house, as to which concern the goods were sold to, and on what credit they were delivered. How much weight would be attached to his answer would depend on circumstances, but the witness had a right to name the concern to which the goods were sold and to which the credit was given. Objections were interposed to interrogatories eight and nine. Conolley, a witness, was asked the amount due from Hartwell, Brunson & Company and whether or not it had been paid; this testimony was also excluded. If the witness knew what goods had been shipped and sold and knew the amount of money that had been received, it was quite proper for him to state the extent of the shipment and whether the sum had or had not been paid, if he had the knowledge.

A supplemental deposition of Flagg was taken and interrogatories nine, twelve and thirteen, and the answers thereto were rejected by the court. As we look at the case the objections raised no question which authorized the exclusion of that testimony and it ought to have been admitted. When it appeared on the trial that Hartwell, Brunson & Company were succeeded by the San Juan Coal, Lumber & Supply Company and that goods were shipped to the branch house at Ridgway and there was an attempt to escape liability by the claim that Hartwell alone was responsible, it was entirely proper to show the history of the entire accounts, the transfer of the account to the San Juan Coal, Lumber & Supply Company and the reasons for it, and also, whether there was any agreement or arrangement between the parties which would release the old firm from any

responsibility for the debts already incurred. So far as we can see these are the only parts of the depositions to which we need to refer.

At the conclusion of the trial the court gave two instructions of which the plaintiffs in error complain and which we believe were not rightly given. The first is the seventh and is:

· "The plaintiffs in this action are suing for a balance of an account, and it rests upon them to show from the evidence what that balance is, and if the evidence in this case is too uncertain for you to determine what balance, if any, is due from the defendants to the plaintiffs, then you must find the issues for the defendants."

It may be conceded there is no radical error in this instruction; it cannot be safely stated that it violates any known principle, but we think it had a tendency to mislead the jury, and threw a burden on the plaintiffs which probably the court did not intend to cast on them, and left with the jury a duty which was not entirely consonant with that which the law devolved on them. Substantially, the court told the jury that it rested on the plaintiffs to show the balance which was due as they were suing on an account, and that if the evidence was too uncertain for the jury to determine what balance was due, they must find the issues for the defendants. From this instruction the jury might possibly infer that the plaintiffs were bound to show the exact sum due, and failing in this were not entitled to recover. We do not believe such was the court's intention but we can see how the jury might have misconstrued it. The learned trial judge undoubtedly knew that the only duty which devolved on the plaintiffs when they were suing on an account, was to show the goods that had been sold with the credits to which the account was entitled, and that the difference would make the balance which the plaintiff could recover unless the account was falsified by the proof of other credits or by proof of the nonsale or nondelivery of the goods unless the defendants could show that as to part of the account the goods were sold to Hartwell after the

dissolution of which the plaintiffs had knowledge. It was simply an unfortunate statement of the rule, and must have misled the jury.

The other instruction is radically wrong, nor are we able to discover in the record anything which would justify the giving of it. It is:

"If the jury believe from the evidence that there is a balance due the plaintiffs for goods sold and delivered to D. C. Hartwell between the 2d day of December, 1890, and the 30th day of July, 1891, and for which defendants might be held because of their failure to notify the plaintiffs of the fact that they were no longer interested in the business at Ridgway, then you will next inquire whether or not the plaintiffs after receiving notice that defendants were not interested at Ridgway, waived the right if any which they might have had against the defendants, because of their alleged failure to give notice, by looking to the said D. C. Hartwell alone for such balance, and if you find from the evidence that they did so waive their right to look to the defendants then they cannot now recover from the said defendants, but such waiver is a question of fact for you to determine from all of the evidence before you."

As we understand the law with regard to the responsibility of firms which do business with each other, in case of a dissolution on the part of either, the law casts on the dissolving firm the duty to notify their creditors or debtors, as the case may be, if they would escape responsibility for goods which may afterwards be sold and shipped to the same point and presumably to the same firm. The court recognized this rule in the trial of the case, and of course, was entirely familiar with it. He stated the law to be that the defendants would be liable if they failed to notify the San Francisco house of the termination of their interest unless the plaintiffs waived the right, if any, which they had against the defendants. We do not understand that the law of waiver as it is generally understood or as it is usually applied has anything to do with that sort of a transaction. In order to deprive the plaintiffs of

their remedy against the persons who were legally bound, they must in some way known to the law have relinquished or released that right and accepted the responsibility of other parties in place of it. It is not by waiving it that the plaintiffs lose their right, but it is rather by the application of some principle of the law of novation, or of substitution, or by parting with a vested right on the basis of sufficiently good past or present consideration. This is familiar and requires the citation of no authorities. Possibly, under some circumstances an argument might be built up in support of the instruction, were it not for the fact that juries are so liable to misunderstand the rules of law that they might easily have misunderstood the use of the word "waiver" and have concluded that since the San Francisco house changed the account to the San Juan Coal, Lumber & Supply Company or changed the account from Hartwell, Brunson & Company to Hartwell, Hooper & Company waived any rights they had and were not entitled to recover. Such acts might easily be construed by the jury to be a waiver, when in the eyes of the law there could be no such result. We are so thoroughly convinced, however, that the jury were misled by this instruction that we are compelled to criticize it and reverse the case because of it. So far as we are able to read the record, and we were compelled to resort to it, rather than the abstract to elicit where the right lay, there is proof which abundantly established the fact that Hartwell, Brunson & Company did owe Hooper & Company some money, and that for a greater or less sum they were entitled to a verdict; they sold goods that were not paid for which had been delivered to the firm without any knowledge of its dissolution, and the old firm was bound to pay for them unless they could prove payment or a notice of dissolution, neither of which did they undertake. Since we are convinced that the plaintiffs were entitled to some verdict we have little hesitation in concluding that this instruction must have misled the jury.

This discussion disposes of all the errors which we regard

as significant or important, and indicates the course which will be taken in the succeeding trial. The judgment will be reversed.

*Reversed.*